Philip Gallagher for Alexis Gonzalez-Badillo. The warrantless and destructive search of Mr. Gonzalez's boot by the police, in this case, was unreasonable under the Fourth Amendment. First, there's no question that Mr. Gonzalez had consented to the search of his bag. That's not in dispute. What is in dispute is that that consent did not extend to the destruction of his boot, and that is what happened. Both the lower court's orders and the record are clear on this. The officer at the hearing testified that you could just pull it apart, that he pried open the boot with his hands. Previously, there had been a small slit no thicker than that a quarter could fit through, but that you could see plastic but nothing else inside there. He used that to remove the bottom of the boot. Indeed, the PSR, which was adopted by the district court, characterizes that as separating the soles from the boots. That is a destructive search, and it is unreasonable for the police to believe that was within the scope of consent. Did the court make any factual findings about whether the boot had been destroyed? I didn't see, were there pictures of the boot that we should be looking at or anything like that? That's correct. The only – first, this is the evidence, Your Honor. The only demonstrative evidence at the hearing was video, security video introduced by the defense. The government, who had the burden of showing that the warrantless search was reasonable, did not produce any pictures of the boots either before or after the search. So then none of that – and the video that I referred to is too far away to be useful. Did the court make a factual determination as to whether the boot was destroyed that we have to give deference to? The court – I think that factual finding is implicit, as I argue in my reply brief, in the structure of the magistrate judge's opinion, which was adopted by the district court. The finding is implicit against you is what you're saying, or for you, that it was in fact destroyed. Yes, Your Honor. And I think that's implicit because the court was very clear that the consent authorized everything the officer did up to and including his looking inside that slit. And that the judge was – the magistrate judge's order was quite clear that that's what the consent authorized. And from there, he moved on to citing the standard from Yameno that consent does not authorize destructive searches. And then to justify the search of the boot, the court relied on other exceptions to the Fourth Amendment, such as exigency or plain view or simple probable cause, instead of consent. All of that discussion was completely unnecessary had the boots not been destroyed, because as the judge made clear, he was well familiar with Yameno. Well, the plain view discussion wasn't completely unnecessary, was it? I mean, if it was in plain view, then we're not talking about going inside it and going beyond the consent for the search. I just – well, my argument as to the plain view being unnecessary, Your Honor, is that that is part of how we know that the judge found that the boots had been destroyed. Because had they not been destroyed, then Mr. Gonzalez's consent authorized the opening of unsealed containers, and that's clear. So the only reason the judge had to consider plain view, as you raise, is because the judge must have found that the boots were in fact destroyed, and therefore consent did not authorize the police officer's actions with those boots. I don't understand how plain view would allow you to destroy the boots. And that was my response on that, Your Honor. Well, I thought – and maybe I misunderstood what I read, because I thought the plain view had a reference to the fact that, one, when he opened the bag, there was a smell of something which the officer said was an odor which was typically emanated from something that used to mask drugs. But I also thought there was evidence that upon examination of the boot, and that is just looking at it, he observed that there was something unusual about the heel, that it was lumpy, or whatever it was, without manipulating the heel of the boot. Right. As I said, everything up until the removal of the heel was included in consent. And so those factors which you're referring to, Judge, just to be clear, are the masking agent, the noticing of the slit, and being able to observe plastic inside the boot, and then finally the texture. I'm not arguing that any of that was unauthorized by the consent. All of those factors give rise to probable cause that there was either evidence or drugs. So you need a warrant. That wouldn't give – once you observed all of that, you wouldn't have the right to just rip the boot.  You have to wait for the warrant. But you have certainly justifiable cause to get the warrant because of the odor and the slit and the little bit of plastic. But you can't at that time use self-help and just rip the boot. Is that your argument in a nutshell? That is my argument in a nutshell. And so my argument – yes, so all those factors you recite are suspicious. And I don't dispute the lower court's findings that at that point the officer had probable cause to continue investigation and to get a warrant. What he did not have, though, was the right to usurp the role of the magistrate and destroy the boot on his own. He also – his other option, frankly, was to ask – I mean, Miumeno makes clear that when searching closed containers, it's not a guessing game for police. Police don't have to say, mother, may I, may I open the zip pocket and all that. That line ends when it's a sealed container. But he certainly could have asked Mr. Gonzalez before opening the boot – Can I take this apart? Can I take this apart? If there's nothing there, you can make your bus. That's completely legitimate. And the officer was completely – But Mr. Gonzalez could have said, I only authorize you to look in that bag. You don't get to look in anything else. He was there when all this happened. Right. He was a yard away. He could have revoked his consent. Hold on a second. You're going too far. He could have done – well, to be clear, the officer made clear he didn't give – as far as the opening of the boot, the officer did not give Mr. Gonzalez an opportunity to object. He opened it up and he sniffed them and then pulled them open without asking a question. So I know there's a suggestion in the government's brief that Mr. Gonzalez passively assented to this. The record belies that, Your Honor. The officer was quite clear he didn't ask a question. There was no opportunity to do that. As with anyone else, he could have revoked his consent to search at any time. He did not. But again, that did not authorize the ripping of the boot. And so at that point, as we said, the officer could have asked for consent to open up the heel of the boot. If Mr. Gonzalez had denied that, then Mr. Gonzalez was subject to a Terry stop and would have been held as long as – He could be held while they went to get the warrant. Right. Instead of – So it wasn't that he was going to run away. Right. He was already going to be held because of the smell and the plastic. Right. The probable cause plainly gave the police the right to hold Mr. Gonzalez and the bag safe and secure while they got a telephone warrant in a little bit of time. Perhaps Mr. Gonzalez may have missed his bus, but that is not exigency. That's Mr. Gonzalez's problem, which he could have obviated by consenting to the search of his heel. And there's nothing – the video is useful as far as exigency, Your Honor, because it is clear that there was nothing contentious, threatening, or anything else going on in that bus station. Mr. Gonzalez was standing passably a yard away while the officer had hid the bag up on a trash can. But there had been no evidence of threatening gestures, argumentativeness, whatever. I have a question. To the district court or with the magistrate judge, it was argued that there was a coercive element, but you stood up right at the beginning of your argument and said it wasn't – that anything had to do with the coercive element because of the IDC, right? Right. I have not briefed those issues. Those are not before us. Right. My sole argument is the extent of the search, that the opening of the shoe was unreasonable in the Fourth Amendment. Do they have some fallback that they can win anyway because it would have been inevitably – is there some reason by which they can, even if you're correct, that they win? Now, the main things the government argued as fallbacks were Plainview, which we've addressed, and as I think you suggested, which I argue in my briefs, Plainview does not authorize the destruction any more than it authorizes an entry into a house or other property. Plainview allows police to seize what they already have access to but not to destroy things. Which is to say then that if it were just inside the boot and he just turned the boot upside down and the drugs came falling out, that would have been part of the consent. It would have consented to that search of the boot. I think if I'm understanding what you're saying, it's so – and I don't want to – It's not in the heel. It's just – it's inside the boot. Oh, I'm sorry. Like inside the shoe. You pick the boot up, dump it out of the boot. Yes, that's a non-destructive search, and I don't think I would have had an argument on that, Your Honor. So the only thing – you're standing here relying on our destructive search precedent. That's what you're relying on. Correct. And the only other factor was exigency, which is also said, I think, makes no sense in these circumstances. His need to make – the Johnson case is very distinguishable when they're – there's another bus station case, which we discussed, and they have guns in that case. They didn't have contact with the defendant, the suspect in that case, and that just is not the – that's not the factors. Well, it's not your position that he was going to get on the bus to or from Houston anyway. He was coming to Houston. It wasn't your – it's not your position that he could have gotten on the bus anyway because he was going to be held because of the nature of the suspicious – Yes, yes. I mean, clearly he probably would have preferred to, but no, he was seized at some point in there. He wasn't running off or something at that point. Right, and that is, again, in the video it's perfectly clear there was no attempt by him to escape. And by the time – again, the video is far enough away it's a little hard to tell, but reading the transcript it looks like that. By the time they actually opened the boot, the second officer had circled back, and so he actually had two officers standing next to him, again, in a completely cooperative way. And the lower courts did find that at that point probable cause or reasonable suspicion to detain had arisen, and I don't dispute that. I think he would have been out of luck had they gotten a warrant, but they didn't. They skipped over that, and that's why you're on a – your inevitable discovery of an independent source or something doesn't help in this case because there's nothing else going on. This is just the police usurping the function of the magistrate. This is – there is no – and there's no excuse for that. And so that would – allowing that to go on in this case would oviate in any case because – in any case would the police have probable cause but just decide that it's so obvious we don't need to go to the court. And that does not excuse the actions in this case. The only remedy in that case is to suppress because it was violating well-established Fourth Amendment laws on destructive and non – the extent of consent, including destructive searches. So accordingly, I ask the court to vacate the judgment of the district court in reverse so Mr. Gonzales can withdraw his guilty plea pursuant to the conditional guilty plea. Thank you. Your Honors, may it please the court, Susanna Pruka on behalf of the United States. Much like my colleague, this is also my first time before this court and I look forward to this argument. Your Honors, Mr. Gonzales consented to the search of his bag. He necessarily consented to the search of the boots found within that bag. Now Mr. Gallagher likes to describe what happened below as a destructive search. But there's nothing in the record that showed that what happened here – excuse me – was a destructive search. You ripped the sole off of the – off of the boot? It's not destructive? Your Honors, there was nothing in the record to show that the sole of the shoe was removed from the boot. What the officer testified to was when he – after he noticed the slit that was quarter-sized to which he could see plastic in, he was able to – because it was not a hard-soled shoe – he was able to manipulate the sole and he could feel that there was sand like in there. He was able to adjust the hole one to see that there was plastic in. He enlarged a hole. And then he enlarged it a little bit. He made a hole. That is not – Your Honors, that is not ripping the sole off the shoe. Can you make a hole in a Louis Vuitton handbag so that – bigger than the hole that's already there? Is that allowed to do? I mean I would think that you would not be allowed to rip a purse like that. And why can you rip a shoe of a – why would that be appropriate? Well, Your Honor, the magistrate judge found that this is not a Louis Vuitton bag, that these were inexpensive boots. What difference does it make whether the thing is nice or not? It's the person's property. It seems like that's an elitist view of whether you have Fourth Amendment rights, doesn't it? Well, the magistrate judge also found that the hole to which we are talking about was put in place by the defendant by improper resealing or it became open during his travels from – at some point in time, either from California or there in Laredo. But that slit was already preexisting. There's a slit, but enlarging it is what the destruction is. But this court has defined destruction as rendering something useless or actually destroying it, and there is nothing in this record that shows that what happened here was that the boot was destroyed beyond useless. This case is more akin to removing the lid off of a baby powder or the Mountain Dew case where all the officer did when at the point in time which we're now talking about is widened a little bit to see that there was heroin inside the boot. Does the record say whether these boots would be wearable without getting your feet wet or dirty with absent glue or tape or something or to fix them? At which point in time? I'm sorry, Your Honor. After the officer manipulated them. Your Honor, there is nothing in the record to show that they were not able to be worn again. That they had a hole in them? Your Honor, it was a thick-soled shoe with a rubber sole, and the – so we're talking about a hole in the sole. We're not talking about an entire sole being ripped off the boot. Do you agree with the opposing counsel that you bear the burden on this point? Your Honors, we bear the – Originally, you bore the burden on this point. Correct. But we don't bear the burden to show that the boot wasn't destroyed. Do you have – We have inferences in favor of the government, Your Honor. What inferences support that the boot did not get a bigger hole in it as a result of the officer's conduct? The fact that there is no evidence in the record to show that the boot was destroyed is an inference in favor of the government to show that it was not destroyed in this case. Well, then why did the officer – I mean, why did the court need to go through all these other analyses to justify the destruction – I mean, to give reasons why it would be okay if the court could just say it wasn't destroyed, this is a – this argument is inapplicable? Well, Your Honor, generally speaking, courts do allow alternative bases within – Were they alternative bases, or did the court determine that the boot – The court did not – the magistrate judge did not determine that the boot had been destroyed in this particular case. And if this – even if this court held that widening the hole is somewhat destructive, the United States would urge this court to then look at the Santana-Aguirre case from the Eighth Circuit, where in that particular case, that was a case adopted by the magistrate judge. That was a consent plus. There, the defendant in that case consented to the search of the boot, and the court held that destruction in that particular case was reasonable because there had been consent in that case. But the United States is not going to admit that what happened here was a destructive search. Would a hypothetical with the purse, would enlarging the hole in the purse and the lining be a destructive search? Repeat that, I'm sorry. Would enlarging a hole in the lining of a purse be a destructive search, according to the United States? If widening an already existing hole is not a destructive search – If there's a little slit in the lining and you make it big so you can look underneath the lining, is that a destructive search or not? No, Your Honor, it is not. Because the purse can still be used to carry things even though it's been forever damaged? Your Honor, it has not been rendered useless or has been destroyed. Well, it's useless as a designer handbag at some point. You can't resell it because it's contributed the value quite a bit. Well, there's no cases to show that the diminishing value of a luxury purse somehow gives more Fourth Amendment protection than anything else. I agree with you. It shouldn't have more protection. So I'm testing the premise using a startling example, hopefully, so that you can see why would it matter for the boot? Well, Your Honor, I would point this case to the McKean's case, which is the Mountain Dew bottles found within the suitcases. In that particular case, the police officers opened the Mountain Dew bottles, which had been sealed, and this court held that that was not a destructive search. Did they rip the lining of the suitcases? Sorry? Did they rip the lining of the suitcases? No, the Mountain Dew bottles were found within the suitcase. They're just in the suitcase, and you can close them back. But if you rip the lining of something, you have to fix it. Well, Your Honor, this was a preexisting slit that was already existing in the sole. But I thought it was a small slit, and they made it big. It was a quarter-sized slit. Your Honor, even if this court finds it a destructive search, which, again, the United States does not accept, there was exigency to allow the police officer to go into the shoe without getting a warrant in this particular case. The case says that there would be exigency when they could hold the suspect because of either certainly reasonable suspicion but probably probable cause. I'd like to point this court back to the magistrate's judge opinion, which held that the officer's actions in here were the least intrusive means in this situation, especially in catching— Is that the standard? Sorry? Whether the officer complies with Fourth Amendment law, which says you have to either hold someone for reasonable suspicion while you get a warrant or just hold them for reasonable suspicion until you acquire additional indicia to give you a warrant, or you have to get a warrant. Why would you – where do we get this theory that the least intrusive means is the test? Well, the magistrate judge discussed that within the context of exigency, and this court's case in Johnson there that was allowing the search of a suitcase as the defendants were getting onto the bus is similar to this particular case. But in that – in describing that case, the magistrate judge talked about that here widening that slit to look and to confirm his 99 percent belief that there was drugs in there was a least intrusive means rather than holding him for a warrant or holding him for the canine dog to come. Has the Supreme Court ever held that you do the least intrusive means and so you don't have to get a warrant to search something? Well, Your Honors, that is within context of the exigency situation that it was – he was going to get on a bus to Houston, and this was the opportunity for the officers to figure out that there was drugs in the boots or not. But again, the United States is not going to agree that this was a destructive search. There was nothing in the record to show, as Mr. Gallagher claimed, that the sole had been ripped off the boot or the heel had been removed from the boot. Nothing of that case. So the exigent – I'm still back at exigent circumstances. The exigent circumstances are he was going to take a bus. He was in line. And they didn't want him to miss his bus. Your Honors. They were concerned about him missing the bus. Correct, which is the same thing that occurred in the Johnson case from 1988 from this court. I thought in the Johnson case they didn't have a reason to hold the person at that point. Well then, Your Honors, that's a stronger case for us here because we had reasons to hold him. No, that's – he wouldn't be getting on the bus. In Johnson, they didn't have a reason to keep the person back, I don't think, did they? Whereas here, they had lots of reasons to keep them back, so there's no exigent circumstance. Your Honors, there is exigent circumstances. The fact that he was on – in line ready to board a bus. And the fact that the probable cause here to go into the boot was very strong. The smell of the boot, his answers to where he was going, where he was coming from, his sweating. The fact that you could see plastic in the sole. The fact that the sole of this boot was no longer stiff. It was malleable, and you could feel sand inside of that. Allowed the officer – or made the officer believe that there was a 99% chance, it's what he testified to, that there was drugs in that sole. And the sole is a much stronger case, Your Honor, than the Johnson case. I don't think anyone's disputing that they had reason to get a warrant, or I think opposing counsel agrees with you, that they had enough, that they could – had a lot to go on. Your – yes, Your Honor. That doesn't make the exigency more greater. But eminent departure is – has been recognized as an exigent circumstance. But why was there imminent departure where you have so much evidence? There was – because if they had enough to hold him, why was there a danger of imminent departure? Your Honor, but there's no – there's no case that says the exigency doesn't exist because they could do an alternative means in the sense that he was in line to get on a bus. And, I mean, that's – the Johnson case held that the recent departure, eminent departure, is a recognized exigent circumstance for a search under this circuit's case law. Can you win – if there's destruction and there isn't exigent circumstance, can you win any other way? Just assuming argument, no. I'm asking you, do you have any other errors in your quiver? Your Honor, we'd ask this court to then look at the Santana-Aguirre case from the Eighth Circuit, which held that consent plus probable cause allowed a destructive search in that case. But, again, the United States – the cases cited in its brief hold that removing a lid or those type of things which do not render a container useless or destroy a container is not a destructive search. In this particular case, there was no evidence that the boot was somehow rendered useless or destructive by what the United States did in this particular case. And you're saying where you have probable cause, you then don't need exigent circumstances? Sorry? Where you have probable cause. In the Santana-Aguirre case, yes. So you don't need exigent circumstances? Correct. That was the holding in that particular case. That was a consent. So you got probable cause to hold them? Probable cause that there was drugs found within that closed container. How does this apply in common context where, you know, in these automobile transportation of drugs kind of cases, can you rip the headliner or the seat to see if once you start smelling drugs in the car? Well, your Honor, automobile – This is a routine search is where people find drugs in this circuit. Well, the automobile exception is a little bit different, but the cases cited by the United States in the brief shows that the scope of consent inside of a car for these type of things includes removing panels and other things that require them fixing after the search. So you can rip the upholstery? But, your Honor, this is not a case where the heel of the boot was ripped off. Can you make a hole in the upholstery to see if there's drugs in the car seat? No, your Honor. But in this particular case, there was a slit in the boot, a preexisting slit. If there's a preexisting slit in the car seat, can you rip it more? The officers can stick their fingers in that hole to see what's going on. And if there is minimal damage done and there is a case cited in the United States brief that that is – What case is that? I'll have to – I will submit a – Well, it's in the brief already? It's in the brief. Yes, your Honor. Okay, thank you. That minimal damage is acceptable. You just cannot render useless or otherwise destroy a closed container when doing a search. Your Honor, if there's no further questions, the United States submits on its brief and requests that you affirm the judgment below. Thank you. Thank you. If I may just make a few quick points, your Honor. First, regarding the assertion that it wasn't destructive, that it was just a little widening of a hole, I would point the court to page 368 of the record, which is where the district court found in the PSR that the officers proceeded to separate the soles from both boots. And I would submit that if my soles were separated from my boots, they are no longer functional, and I would go to a repair shop and not – it's not self-help at that point. Were there slits in both boots? No, just one. But they separated the soles in both boots. Yes, your Honor. And that's – yes, paragraph 7 of the PSR. Second, I think the baby powder, the Jackson case cited by the government is not helpful because there, unlike here, the district court made a specific finding that the containers, the baby powder containers still sealed and worked as intended, and obviously that's not in the record here. Santana-Aguirre is, frankly, a troubling case. I'd urge, as I said in my brief, the court to reject that case. There it is not – the court's reasoning was not based on probable cause plus consent. The district court – sorry, the court of appeals specifically said they don't even reach consent. They just said probable cause allowed them to destroy the candles at issue in that case. And they did that based on automobile exception cases where the scope of warrantless searches is broader. But importing the automobile exception to searches of personal property is unwarranted, both in the presence of this court and the Supreme Court. Have we ever cited that Eighth Circuit approach approvingly? No, I've never – I checked. I've never seen Santana-Aguirre – frankly, I've never seen it cited by any other circuit but the Eighth Coroner when I checked. So it is still good law in that circuit, but I have not seen it extended elsewhere. And then finally, the soda bottle case, which the government speaks to, that case, as I pointed out, that was decided prior to Yemeno where the Supreme Court laid out that scope of consent only goes up to the point of destruction and no further. So the court in that case – I think that was the 10th – did not consider whether or not the bottles had been destroyed by their opening. They may have been, but they were frankly using the wrong framework because they didn't have the benefit of Yemeno back then. It was decided about a half year before Yemeno. So the usefulness of that case isn't great either. But the boots here were destroyed. That means consent was not authorized. The police office exceeded the scope of consent. And as I think I discussed in my initial time, nothing else saves this cert. And so I ask this court to vidicate the district court's judgment. Thank you. The court has the arguments of both counsel on the case and has then taken under advisement. And congratulations, Ms. Pruka, for making it through your first argument. And always a pleasure to have you, Mr. Gallagher, as well. Thank you.